**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| MUSICQUBED INNOVATIONS, LLC, | CIVIL ACTION NO. 2:23-cv-00554 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| CHICKEN SOUP FOR THE SOUL ENTERTAINMENT, INC., and REDBOX AUTOMATED RETAIL, LLC, | |
| Defendants. | |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff MusicQubed Innovations, LLC (hereinafter, "MusicQubed" or "Plaintiff") files this complaint against Chicken Soup for the Soul Entertainment, Inc., (hereinafter, "CSSE") and Redbox Automated Retail, LLC, (hereinafter, "Redbox") (collectively hereinafter, "Defendants") alleging, based on its own knowledge as to itself and its own actions, and based on information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

1.    This is a patent infringement action to stop Defendants' infringement of the following United States Patents (the "Asserted Patents"), copies of which are available in the links below:

| | U.S. Patent No. | Title | Available at |
|---|---|---|---|
| A. | RE 42,685 | Upgrading Digital Media Servers | https://patentcenter.uspto.gov/applications/11961991<br><br>https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE42685 |
| B. | 7,130,616 | System And Method For Providing Content, Management, And Interactivity For Client Devices | https://patentcenter.uspto.gov/applications/09924646<br><br>https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7130616 |

|     | U.S. Patent No. | Title | Available at |
|-----|-----------------|-------|--------------|
| C.  | 9,491,215  | Electronic Media Distribution System | https://patentcenter.uspto.gov/applications/14700778 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9491215 |
| D.  | 7,461,077  | Representation Of Data Records | https://patentcenter.uspto.gov/applications/10208635 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7461077 |
| E.  | 8,930,277  | Content Management Apparatus | https://patentcenter.uspto.gov/applications/12772058 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8930277 |
| F.  | 7,281,274  | Electronic Media Distribution System | https://patentcenter.uspto.gov/applications/10685536 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7281274 |
| G.  | 10,469,601 | Content Management Apparatus | https://patentcenter.uspto.gov/applications/13695413 <br><br> https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10469601 |

2.      MusicQubed seeks injunctive relief and monetary damages.

## PARTIES

3.      MusicQubed is a limited liability company organized under the laws of the State of Texas, with its principal place of business at 17350 State Highway 249, STE 220, Houston, TX 77064-1132 (Harris County).

4.      Upon information and belief, CSSE is a corporation organized under the laws of the State of Delaware with a place of business at 132 East Putnam Avenue, Floor 2W, Cos Cob, CT 06807.  Upon information and belief, CSSE sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products

and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.  CSSE may be served through its registered agent for service, Cogency Global Inc., located at 850 New Burton Road, STE 201, Dover, DE 19904 (Kent).

5.      Upon information and belief, Redbox is a corporation organized under the laws of Delaware with a principal place of business at One Tower Lane, STE 900, Oakbrook Terrace, IL 60181.  Upon information and belief, Redbox sells, offers to sell, and/or uses products and services throughout the United States, including in this judicial district, and introduces infringing products and services into the stream of commerce knowing that they would be sold and/or used in this judicial district and elsewhere in the United States.  Redbox may be served through its registered agent for service, Cogency Global Inc., located at 1601 Elm Street, STE 4360, Dallas, TX 75201.

6.      Defendant CSSE is an "advertising-supported video-on-demand (AVOD) compan[y] with three flagship AVOD streaming services: Redbox, Crackle, and Chicken Soup for the Soul." *Chicken Soup for the Soul Entertainment, Inc.*, SEC 8-K Form (filed Nov. 21, 2023), SEC.GOV, https://www.sec.gov/Archives/edgar/data/1679063/000110465923120001/tm2331190d1_ex99-1.htm.  Upon information and belief, Defendant CSSE "operates Redbox Free Live TV, a free ad-supported streaming television service (FAST), with nearly 180 FAST channels as well as a transaction video on demand (TVOD) service, and a network of approximately 29,000 kiosks across the US. . ." *Id.*  Upon information and belief, "[t]o provide original and exclusive content to its viewers, [Defendant CSSE] creates, acquires, and distributes films and TV series through its Screen Media and Chicken Soup for the Soul TV Group subsidiaries." *Id.*

7.      Upon information and belief, Defendant Redbox is a wholly-owned subsidiary Defendant CSSE.  *See Redbox Privacy Policy*, REDBOX.COM, https://www.redbox.com/privacy

(explaining that "Redbox Automated Retail, LLC" is a subsidiary of parent company "Chicken Soup for the Soul Entertainment Inc.").

## JURISDICTION AND VENUE

8.   MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

9.   This is an action for infringement of a United States patent arising under 35 U.S.C. §§ 271, 281, and 284–85, among others.  This Court has subject matter jurisdiction of the action under 28 U.S.C. § 1331 and § 1338(a).

10.   Venue is proper against Defendants in this District pursuant to 28 U.S.C. § 1400(b) because it has maintained an established and regular places of business in this District and has committed acts of patent infringement in this District.  *See In re: Cray Inc.*, 871 F.3d 1355, 1362-1363 (Fed. Cir. 2017).

11.   Defendants are subject to this Court's specific and general personal jurisdiction under due process and/or the Texas Long Arm Statute due at least to Defendants' substantial business in this judicial district, including: (i) at least a portion of the infringement alleged herein; and (ii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.

12.   Specifically, Defendants intend to do and do business in, have committed acts of infringement in, and continue to commit acts of infringement in this District directly, through intermediaries, by contributing to and through their inducement of third parties, and offer their products or services, including those accused of infringement here, to customers and potential customers located in Texas, including in this District.

13.   Defendants maintain regular and established places of business in this District.

14.    Upon information and belief and based upon public information, Defendants own, operate, manage, conduct business, and direct and control the operations of, and have employees that work from and out of, facilities at locations in this District, including, but not limited to, facilities at the following addresses: (1) 300 E End Blvd S, Marshall, TX 75670; (2) 1301 Custer Rd Plano, TX 75075; (3) 3513 E Park Blvd, Plano, Tx 75074; (4) 3001 S Central Expy, McKinney, TX 75070; (5) 6800 Virginia Pkwy, McKinney, TX 75071; (6) 100 E Taylor St, Sherman, TX 75092; (7) 1900 E Southeast Loop 323, Tyler, TX 75701; and (8) 7990 W Eldorado Pkw, McKinney, TX 75070.

15.    Upon information and belief, Defendants own, operate, manage, conduct business, direct and control the operations of, and have employees that work from and out of, facilities at locations in this District.

16.    Defendants commit acts of infringement from this District, including, but not limited to, use of the Accused Products and inducement of third parties to use the Accused Products.

17.    Upon information and belief, Defendants' employees use and have used and have induced to be used the Accused Products from Defendants' locations and other locations in this District in an infringing manner, and Defendants' customers used use and have used the Accused Products in this District in an infringing manner.

18.    Upon information and belief, Defendants own, lease and/or exercise possession or control over locations in this District; condition employment on continued residence in the venue; make representations that they have a place of business in a district; and require employees and/or agents to store equipment and/or product inventory used for sales, repairs, and/or demonstrations in an employee's home. *See, e.g.*, *Careers*, REDBOX.COM, https://www.redbox.com/careers; https://recruiting2.ultipro.com/RED1020RARL/JobBoard/2d40d12c-ba03-423b-b519-

be373c45930b/OpportunityDetail?opportunityId=7a5d7007-7835-46dd-b9dd-ce13e1867690

(requiring employees "to store at least 50 cubic feet of company merchandise within [their] personal residence," "[d]rive a company vehicle to install, repair, and maintain all product lines as assigned," "[m]anage and maintain a parts inventory, repair tools, and equipment," "[p]rovide quality customer service through regular interaction and communication with co-workers, phone based machine support, external customers and contractors, store owners, and managers/employees," "[s]ecure all company merchandise and ensure kiosks are properly locked," "[p]roperly care for and follow maintenance schedule for all company issued property, including company vehicle, phone, tablet, parts, tools and inventory," and "[l]oad and unload product from automobile, residence and warehouse."); LINKEDIN, https://www.linkedin.com/jobs/view/field-service-technician-dallas-tx-at-redbox-entertainment-inc-3615113910/ ("Ability to store at least 50 cubic feet of company merchandise within your personal residence").

## THE ACCUSED PRODUCTS

19.     MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

20.     Based upon public information, Defendants make, use, cause to be used, sell and/or offer for sale streaming products and services, including the Redbox mobile app ("Redbox App") and products and services available at https://www.redbox.com/, and associated hardware and software and applications, including, at least, functions and operations for screen mirroring from the Redbox App; for streaming content protection and encryption; for the user interface for streaming content on the Redbox website and the Redbox App; for the downloading of rented and/or purchased videos on demand from the Redbox website on, at least, a mobile phone; for the system enabling streaming of free live TV, including the user selection of multiple channels; and

for enabling users to users to view trailers for movies on demand, purchasing and downloading movies, and then viewing the downloaded movies when their device is offline, (collectively, the "Accused Products").



**<u>Figure 1</u>**
Source: Redbox.com, https://www.redbox.com/.

**Figure 2**

Source: *Supported Devices*, REDBOX.COM, https://www.redbox.com/ondemand/supported-devices.

21.     Based upon public information, Defendants own, operate, advertise, and/or control the website https://www.redbox.com/ through which Defendants advertise, sell, offer to sell, provide and/or educate customers about Defendants' products and services, including the Accused Products. *See Redbox Privacy Policy*, REDBOX.COM, https://www.redbox.com/privacy ("This Privacy Policy describes our practices regarding the collection, use and disclosure of data collected by Redbox Automated Retail, LLC, its parent Chicken Soup for the Soul Entertainment Inc., its affiliates, including Crackle Plus, LLC, and its subsidiaries ('Redbox') through our web sites, kiosks, applications, and streaming and other online services that post or include a link to this Privacy Policy (collectively, the 'Redbox Platforms').").

22.     Based upon public information, Defendants, directly and/or through their agents and intermediaries, also operate, advertise, and/or control the locations throughout this State and this District, including in at least Plano, Marshall, McKinney, and Dallas, through which Defendants and their agents and employees use, advertise, provide, and/or educate third parties, including but not limited to customers, about the Accused Products.

## COUNT I: INFRINGEMENT OF U.S. PATENT NO. RE42,685

23.     MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

24.     The USPTO duly issued U.S. Patent No. RE42,685 (the "'685 patent") on September 6, 2011, after full and fair examination of Application No. 11/961,991, which was filed on December 20, 2007.  *See* '685 patent at 1.  A Certificate of Correction was duly issued on February 7, 2012.  *See id.* at 20.

25.     The '685 patent is entitled "Upgrading Digital Media Servers."  *See id.*

26.     MusicQubed owns all substantial rights, interest, and title in and to the '685 patent, including the sole and exclusive right to prosecute this action and enforce the '685 patent against infringers, and to collect damages for all relevant times.

27.     The claims of the '685 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of hardware and software by allowing for the upgrading of hardware and software components of a digital media server without disrupting media delivery services.

28.     The written description of the '685 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '685 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

29.     Defendants have infringed and continue to infringe the '685 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

30.     Defendants have directly infringed and continue to directly infringe, either literally or

under the doctrine of equivalents, at least claim 1 of the '685 patent.

31.    For example, the Accused Products, when used by Defendants or a customer, perform a method of upgrading a digital media server comprising an object oriented runtime environment implemented in a memory, the method comprising: checking for the existence of an upgrade package comprising new objects; identifying the new objects in the upgrade package; identifying functions and properties of the new objects; evaluating compatibility of the new objects; instantiating new objects as applications objects or services objects in the memory; determining whether a new object replaces an old object in the object oriented runtime environment; and if the new object replaces the old object, replacing the old object by: locking the old object and the new object; copying fields from the old object to the new object; establishing links from the new object to objects dependent on the old object; rerouting links to the old object from other objects to the new object; in response to rerouting the links, unlocking the new object; and removing the old object.    *See   e.g.,   The   Redbox   App*,   GOOGLEPLAY, https://play.google.com/store/apps/details?id=com.redbox.android.activity; **Figure 3** (below).



**<u>Figure 3</u>**

Source: *The Redbox App*, GOOGLEPLAY,
https://play.google.com/store/apps/details?id=com.redbox.android.activity

32.     More specifically, as one example, upon information and belief, the Accused Products, when used by Defendants or a customer, perform a method of upgrading a digital media server (for one example, at least, the Redbox App operating with screen cast or mirroring) comprising an object oriented runtime environment implemented in a memory.  *See, e.g.*, **Figure 4** (below).

**Using Chromecast**

For more information on using Chromecast, refer to the table below:

**Chromecasting Redbox On Demand from an Android or iOS device**

1. Your Android, iOS smartphone or tablet must be on the same wireless network as your Chromecast device.
2. On your smartphone or tablet, open the Redbox app, go to your Redbox Library, and find the title you want to Chromecast.
3. On the title details page, select the Chromecast icon and choose the Chromecast device you want to use to view the content.
4. Once connected, simply start playback of the title.

**Chromecasting Redbox On Demand from a Computer**

1. Your laptop or desktop computer must be on the same wireless network as your Chromecast device.
2. From your Chrome browser, access Redbox.com
3. Visit My Library, go to the title you want to Chromecast, initiate playback, select the Chromecast icon displayed in the player and choose the Chromecast device you want to use.
4. The Chromecast icon on your browser will turn blue if the cast is active.
5. To stop the cast, click the Chromecast icon and select Stop.

If you need more information on Chromecast, its available through Chromecast Support.

**Figure 4**
Source: *Redbox Help Center*, REDBOX.COM, https://help.redbox.com/redbox-streaming-services/streaming-requirements-features/1717/ (search for "Using Chromecast").

33.     MusicQubed or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '685 patent.

34.     Plaintiff has been damaged and continues to be damaged as a result of the infringing

conduct by Defendants alleged above.  Thus, Defendants are liable to MusicQubed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT II: INFRINGEMENT OF U.S. PATENT NO. 7,130,616

35.     MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

36.     The USPTO duly issued U.S. Patent No. 7,130,616 (the "'616 patent") on October 31, 2006, after full and fair examination of Application No. 09/924,646, which was filed on August 7, 2001.  *See* '616 patent at 1.

37.     The '685 patent is entitled "System And Method For Providing Content, Management, And Interactivity For Client Devices."  *See id.*

38.     MusicQubed owns all substantial rights, interest, and title in and to the '616 patent, including the sole and exclusive right to prosecute this action and enforce the '616 patent against infringers, and to collect damages for all relevant times.

39.     The claims of the '616 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of providing content, management, and interactivity for client devices, in which digital data based on user specified preferences is obtained and transferred from a wide area network to a computer and the digital data is sent from the computer to a client device using a wireless data transceiver.

40.     The written description of the '616 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the priority date. The '616 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

41.     Defendants have infringed and continue to infringe the '616 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

42.     Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '616 patent.

43.     For example, the Accused Products, when used by Defendants or a customer, perform a method comprising using previously provided user specified preferences to automatically obtain and transfer digitally encoded audiovisual content from a wide area network to a computer; causing a television in communication with the computer via a wireless data transceiver to play a representation of the digitally encoded audiovisual content; and manipulating the play of the representation of digitally encoded audiovisual content on the television from a portable electronic device. *See* **Figure 5** (below).

**Using Chromecast**

For more information on using Chromecast, refer to the table below:

**Chromecasting Redbox On Demand from an Android or iOS device**

1. Your Android, iOS smartphone or tablet must be on the same wireless network as your Chromecast device.
2. On your smartphone or tablet, open the Redbox app, go to your Redbox Library, and find the title you want to Chromecast.
3. On the title details page, select the Chromecast icon and choose the Chromecast device you want to use to view the content.
4. Once connected, simply start playback of the title.

**Chromecasting Redbox On Demand from a Computer**

1. Your laptop or desktop computer must be on the same wireless network as your Chromecast device.
2. From your Chrome browser, access Redbox.com
3. Visit My Library, go to the title you want to Chromecast, initiate playback, select the Chromecast icon displayed in the player and choose the Chromecast device you want to use.
4. The Chromecast icon on your browser will turn blue if the cast is active.
5. To stop the cast, click the Chromecast icon and select Stop.

If you need more information on Chromecast, its available through Chromecast Support.

**Figure 5**

Source: *Redbox Help Center*, REDBOX.COM, https://help.redbox.com/redbox-streaming-services/streaming-requirements-features/1717/ (search for "Using Chromecast").

44.     More specifically, as one example, upon information and belief, the screen mirroring functions and operations of the Redbox App and/or https://www.redbox.com, when used by Defendants or a customer, perform a method comprising using previously provided user specified preferences to automatically obtain and transfer digitally encoded audiovisual content from a wide area network to a computer; causing a television in communication with the computer via a wireless data transceiver to play a representation of the digitally encoded audiovisual content; and manipulating the play of the representation of digitally encoded audiovisual content on the television from a portable electronic device.  *See* **Figure 5** (above).

45.     MusicQubed or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the

'616 patent.

46.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to MusicQubed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## COUNT III: INFRINGEMENT OF U.S. PATENT NO. 9,491,215

47.     MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

48.     The USPTO duly issued U.S. Patent No. 9,491,215 (the "'215 patent") on November 8, 2016, after full and fair examination of Application No. 14/700,778, which was filed on April 30, 2015.  *See* '215 patent at 1.

49.     The '215 patent is entitled "Electronic Media Distribution System."  *See id.*

50.     MusicQubed owns all substantial rights, interest, and title in and to the '215 patent, including the sole and exclusive right to prosecute this action and enforce the '215 patent against infringers, and to collect damages for all relevant times.

51.     The claims of the '215 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of the distribution of electronic content and information, and in particular in the distribution of electronic information stored on a device.

52.     The written description of the '215 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the priority date. The '215 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

53.     Defendants have infringed and continue to infringe the '215 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

54.     Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '215 patent.

55.     For example, the Accused Products, when used by Defendants or a customer, perform a method, comprising a receiving device: sending, to an intermediate server device, a request to deliver content identified by a notification received from the intermediate server device; sending, to the intermediate server device, one or more messages that are indicative of installed software of the recipient device that the recipient device uses to protect the content; and receiving the content, from the intermediate server device, if the one or more messages are indicative of software trusted to enforce a content policy associated with the content.  *See* **Figures 6–8**; *see also Redbox On Demand Service Terms*, REDBOX.COM, https://www.redbox.com/ondemandterms.



**<u>Figure 6</u>**
Source: *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-movies/featured.

56.     More specifically (as one example), upon information and belief, the content protection

and encryption functions and operations of the Redbox App and/or https://www.redbox.com, when used by Defendants or a customer, perform a method, comprising a receiving device: sending, to an intermediate server device, a request to deliver content identified by a notification received from the intermediate server device; sending, to the intermediate server device, one or more messages that are indicative of installed software of the recipient device that the recipient device uses to protect the content; and receiving the content, from the intermediate server device, if the one or more messages are indicative of software trusted to enforce a content policy associated with the content.  *See* **Figures 6–8**; *see also Redbox On Demand Service Terms*, REDBOX.COM, https://www.redbox.com/ondemandterms.



**Figure 7**
Source: *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-movies/on-fire



**Figure 8**

Source: *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-checkout.

57. Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe the '215 patent by inducing others to directly infringe the '215 patent. Defendants have induced and continue to induce their subsidiaries, partners, affiliates, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '215 patent by using the Accused Products. Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '215 patent, including, for example, claim 1 of the '215 patent. Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner. Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '215 patent and with the knowledge that the induced acts constitute infringement. Defendants are aware that the normal

and customary use of the Accused Products by others would infringe the '215 patent.  Defendants'
inducement is ongoing.

58.    Since at least the time of receiving this Complaint, Defendants have also indirectly
infringed and continues to indirectly infringe by contributing to the infringement of the '215 patent.
Defendants have contributed and continues to contribute to the direct infringement of the '215
patent by personnel, contractors, customers, and other end users by encouraging them to use the
Accused Products to perform the steps of the patented process as described in one or more claims
of the '215 patent.  The Accused Products have special features that are specially designed to be
used in an infringing way and that have no substantial uses other than ones that infringe one or
more claims of the '215 patent, including, for example, claim 1 of the '215 patent.  The special
features constitute a material part of the invention of one or more of the claims of the '215 patent
and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants'
contributory infringement is ongoing.

59.    Defendants have had knowledge of the '215 patent at least as of the date when it was
notified of the filing of this action.

60.    Furthermore, on information and belief, Defendants have a policy or practice of not
reviewing the patents of others (including instructing their employees to not review the patents of
others), and thus has been willfully blind of Plaintiff's patent rights.

61.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid
patent and this objective risk was either known or should have been known by Defendants.

62.    Since at least the time of receiving this Complaint, Defendants' direct and indirect
infringement of the '215 patent is, has been, and continues to be willful, intentional, deliberate, or
in conscious disregard of Plaintiff's rights under the patent.

63.     MusicQubed or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '215 patent.

64.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to MusicQubed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

65.     MusicQubed has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  MusicQubed has and will continue to suffer this harm by virtue of Defendants' infringement of the '215 patent.  Defendants' actions have interfered with and will interfere with MusicQubed's ability to license technology.  The balance of hardships favors MusicQubed's ability to commercialize its own ideas and technology.  The public interest in allowing MusicQubed to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

## COUNT IV: INFRINGEMENT OF U.S. PATENT NO. 7,461,077

66.     MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

67.     The USPTO duly issued U.S. Patent No. 7,461,077 (the "'077 patent") on December 2, 2008, after full and fair examination of Application No. 10/208,635, which was filed on July 29, 2002.  *See* '077 patent at 1.

68.     The '077 patent is entitled "Representation Of Data Records."  *See id.*

69.     MusicQubed owns all substantial rights, interest, and title in and to the '077 patent, including the sole and exclusive right to prosecute this action and enforce the '077 patent against

infringers, and to collect damages for all relevant times.

70.     The claims of the '077 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.   Rather, the claimed inventions include inventive components that improve upon the function and operation of representing and managing data on a display.

71.     The written description of the '077 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '077 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

72.     Defendants have infringed and continue to infringe the '077 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

73.     Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '077 patent.

74.     For example, the Accused Products, when used by Defendants or a customer, perform a computerized method for representing data on a display, the method comprising: querying a data source to obtain data comprising a first data record; presenting the first data record on the display as a data field; and presenting on the display a record handle for manipulation of the first data record; wherein the data field has any data field type in the group consisting of a single data element, a list of data elements, and a reference to a second data record; wherein the record handle is a visual element that represents the first data record and that is operative to control and

continuously track the state of the first data record on the display and in the data source; and wherein the record handle is operative to visually indicate to a user a current default action that will be activated when the user clicks on the record handle.  *See* **Figures 9–10** (below).



**<u>Figure 9</u>**

Source: *Watch Free*, Redbox.com, https://www.redbox.com/stream-free-live-tv.



**<u>Figure 10</u>**

Source: Screenshot of the user interface for "Watch Free" features in the Redbox mobile app.

75.     More specifically (as one example), upon information and belief, the user interface within the programs on the Redbox website and Redbox App, when used by Defendants or a customer, performs a computerized method for representing data on a display, the method comprising: querying a data source to obtain data comprising a first data record; presenting the first data record on the display as a data field; and presenting on the display a record handle for manipulation of the first data record; wherein the data field has any data field type in the group consisting of a single data element, a list of data elements, and a reference to a second data record; wherein the record handle is a visual element that represents the first data record and that is operative to control and continuously track the state of the first data record on the display and in the data source; and wherein the record handle is operative to visually indicate to a user a current default action that will be activated when the user clicks on the record handle. *See, e.g.*, **Figures 9–10** (above).

76.     Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe the '077 patent by inducing others to directly infringe the '077 patent.  Defendants have induced and continue to induce their subsidiaries, partners, affiliates, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '077 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '077 patent, including, for example, claim 1 of the '077 patent.  Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users

to use the Accused Products in an infringing manner.  Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '077 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '077 patent.  Defendants' inducement is ongoing.

77.     Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '077 patent. Defendants have contributed and continues to contribute to the direct infringement of the '077 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '077 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '077 patent, including, for example, claim 1 of the '077 patent.  The special features constitute a material part of the invention of one or more of the claims of the '077 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

78.     Defendants have had knowledge of the '077 patent at least as of the date when it was notified of the filing of this action.

79.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

80.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

81.     Since at least the time of receiving this Complaint, Defendants' direct and indirect infringement of the '077 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

82.     MusicQubed or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '077 patent.

83.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to MusicQubed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

84.     MusicQubed has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  MusicQubed has and will continue to suffer this harm by virtue of Defendants' infringement of the '077 patent.  Defendants' actions have interfered with and will interfere with MusicQubed's ability to license technology.  The balance of hardships favors MusicQubed's ability to commercialize its own ideas and technology.  The public interest in allowing MusicQubed to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT V: INFRINGEMENT OF U.S. PATENT NO. 8,930,277**

85.     MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

86.     The USPTO duly issued U.S. Patent No. 8,930,277 (the "'277 patent") on January 6, 2015, after full and fair examination of Application No. 12/772,058, which was filed on April 30, 2010.  *See* '277 patent at 1.

87.     The '277 patent is entitled "Content Management Apparatus." *See id.*

88.     MusicQubed owns all substantial rights, interest, and title in and to the '277 patent, including the sole and exclusive right to prosecute this action and enforce the '277 patent against infringers, and to collect damages for all relevant times.

89.     The claims of the '277 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation for providing content to a user device and controlling access of the user device to specific content.

90.     The written description of the '277 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '277 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

91.     Defendants have infringed and continue to infringe the '277 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

92.     Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '277 patent.

93.     For example, the Accused Products, when used by Defendants or a customer, perform a method of providing one or more items of content from a presentable list or chart to a plurality of user devices, comprising: defining, at a server, user access permissions, including temporary user access permissions, relating to one or more items of content; distributing to an application on

a user device for storage thereon, the one or more items of content, as a of fragments in a format capable of being played by the application providing temporary access to said one or more items of content by temporarily reconstituting a respective item of content from the plurality of constituent fragments based on the defined user access permissions; and after distributing the one or more items of content in the fragmented format and in response to a permission change or purchase event, instructing said application to convert the plurality of fragments into a permanent reconstructed format. *See* **Figures 11–12** (below).

**Download for Offline Viewing**

Downloading the title is only for offline viewing and you cannot select the location to download it to your device. The download will remain within the Redbox application. Below are some common solutions for download completion errors:

**Mobile Device (Phone/Tablet)**

1. Verify your mobile device has all necessary software upgrades.
2. Verify that you are on the current version of the application.
3. Verify your data/Wi-Fi connection is strong enough.
4. Close the mobile app and try again.
5. Power cycle the device.

**Figure 11**
Source: *Redbox Help Center*, REDBOX.COM, *Redbox Streaming Services*,
https://help.redbox.com/redbox-streaming-services/streaming-requirements-features/1686/
(search for "Download for Offline Viewing").

**Streaming on multiple devices**

Below are the requirements for streaming the same title concurrently on multiple devices:

**Title that you Purchased / Bought:**

• You can stream the same title on up to two (2) devices simultaneously.

**Title that you Rented:**

• You can stream the same title on one (1) devices at a time.

**Figure 12**
Source: *Redbox Help Center*, REDBOX.COM, *Redbox Streaming Services*,
https://help.redbox.com/redbox-streaming-services/streaming-requirements-features/1713/
(search for "Streaming on multiple devices").

94.     More specifically (as one example), upon information and belief, the Accused Products, when used by Defendants or a customer, perform a method of providing one or more items of content from a presentable list or chart to a plurality of user devices, comprising: defining, at a server, user access permissions, including temporary user access permissions, relating to one or more items of content; distributing to an application on a user device for storage thereon, the one or more items of content, as a of fragments in a format capable of being played by the application providing temporary access to said one or more items of content by temporarily reconstituting a respective item of content from the plurality of constituent fragments based on the defined user access permissions; and after distributing the one or more items of content in the fragmented format and in response to a permission change or purchase event, instructing said application to convert the plurality of fragments into a permanent reconstructed format (*e.g.*, enabling users to view trailers for movies on demand, purchase and download movies, and then view the downloaded movies when their device is offline).

95.     Upon information and belief, Redbox streaming services support the purchase of video on demand movies after preview and then viewing the movies when the device is offline.  *See* **Figures 13–14** (below).



**Figure 13**

Source: *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-movies/on-fire?queryId=46aa4d979b7d7d65 (showing user interface of On Demand streaming services)



**Figure 14**

Source: *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-movies/on-fire?queryId=46aa4d979b7d7d65 (showing user interface of pre-purchase preview feature for On Demand streaming services)

96.    Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe the '277 patent by inducing others to directly infringe

the '277 patent.  Defendants have induced and continue to induce their subsidiaries, partners, affiliates, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '277 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '277 patent, including, for example, claim 1 of the '277 patent.  Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '277 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '277 patent.  Defendants' inducement is ongoing.

97.    Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '277 patent. Defendants have contributed and continues to contribute to the direct infringement of the '277 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '277 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '277 patent, including, for example, claim 1 of the '277 patent.  The special features include, for example, claim 1 of the '277 patent.  The special features constitute a material

part of the invention of one or more of the claims of the '277 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

98.   Defendants have had knowledge of the '277 patent at least as of the date when it was notified of the filing of this action.

99.   Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

100.   Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

101.   Since at least the time of receiving this Complaint, Defendants' direct and indirect infringement of the '277 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

102.   MusicQubed or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '277 patent.

103.   Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to MusicQubed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

104.   MusicQubed has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  MusicQubed has and will continue to suffer this harm by virtue of Defendants' infringement of the '277 patent.

Defendants' actions have interfered with and will interfere with MusicQubed's ability to license technology. The balance of hardships favors MusicQubed's ability to commercialize its own ideas and technology. The public interest in allowing MusicQubed to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

### COUNT VI: INFRINGEMENT OF U.S. PATENT NO. 7,281,274

105.    MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

106.    The USPTO duly issued U.S. Patent No. 7,281,274 (the "'274 patent") on October 9, 2007, after full and fair examination of Application No. 10/685,536, which was filed on October 16, 2003. *See* '274 patent at 1.

107.    The '274 patent is entitled "Electronic Media Distribution System." *See id.*

108.    MusicQubed owns all substantial rights, interest, and title in and to the '274 patent, including the sole and exclusive right to prosecute this action and enforce the '274 patent against infringers, and to collect damages for all relevant times.

109.    The claims of the '274 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity. Rather, the claimed inventions include inventive components that improve upon the function and operation of the distribution of electronic content and information stored on a device.

110.    The written description of the '274 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and improved upon what may have been considered conventional or generic in the art at the priority date. The '274 patent also identifies and circumscribes all information necessary for a skilled

artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

111.    Defendants have infringed and continue to infringe the '274 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

112.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '274 patent.

113.    For example, the Accused Products, when used by Defendants or a customer, perform a method for sharing information, including: receiving sending instructions to transfer to a recipient a file, said sending instructions identifying a specific type of memory device on which the file is permitted to be stored at the recipient; receiving the file; sending a notice to the recipient indicating that the recipient may download the file; receiving a request for the file from the recipient; determining if transfer software to transfer the file only to the specific type of memory device is installed at the recipient; if transfer software is not installed at the recipient, then sending the transfer software to the recipient; and sending the file to the recipient to be stored on the specific type of memory device only if the transfer software to install only to the specific type of memory device is installed.  *See* **Figure 15** (below).



**Figure 15**

Source: *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand/supported-devices.

114.     More specifically (as one example), upon information and belief, the Accused Products, when used by Defendants or a customer, perform a method for sharing information, including: receiving sending instructions to transfer to a recipient a file, said sending instructions identifying a specific type of memory device on which the file is permitted to be stored at the recipient; receiving the file; sending a notice to the recipient indicating that the recipient may download the file; receiving a request for the file from the recipient; determining if transfer software to transfer the file only to the specific type of memory device is installed at the recipient; if transfer software is not installed at the recipient, then sending the transfer software to the recipient; and sending the file to the recipient to be stored on the specific type of memory device only if the transfer software to install only to the specific type of memory device is installed (*e.g.*, providing for downloading of rented and/or purchased videos on demand from the Redbox website

in a web browser on, at least, an Android phone).

115.    Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe the '274 patent by inducing others to directly infringe the '274 patent.   Defendants have induced and continue to induce their subsidiaries, partners, affiliates, and end-users, including Defendants' customers and potential customers, to directly infringe, either literally or under the doctrine of equivalents, the '274 patent by using the Accused Products.   Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '274 patent, including, for example, claim 1 of the '274 patent.   Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.   Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '274 patent and with the knowledge that the induced acts constitute infringement.   Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '274 patent.   Defendants' inducement is ongoing.

116.    Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '274 patent. Defendants have contributed and continues to contribute to the direct infringement of the '274 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '274 patent.   The Accused Products have special features that are specially designed to be

used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '274 patent, including, for example, claim 1 of the '274 patent.  The special features constitute a material part of the invention of one or more of the claims of the '274 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

117.    Defendants have had knowledge of the '274 patent at least as of the date when it was notified of the filing of this action.

118.    Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

119.    Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

120.    Since at least the time of receiving this Complaint, Defendants' direct and indirect infringement of the '274 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

121.    MusicQubed or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '274 patent.

122.    Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to MusicQubed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

123.    MusicQubed has suffered and continues to suffer irreparable harm, through its loss of

market share and goodwill, for which there is no adequate remedy at law.  MusicQubed has and will continue to suffer this harm by virtue of Defendants' infringement of the '274 patent. Defendants' actions have interfered with and will interfere with MusicQubed's ability to license technology.  The balance of hardships favors MusicQubed's ability to commercialize its own ideas and technology.  The public interest in allowing MusicQubed to enforce its right to exclude outweighs other public interests, which supports injunctive relief in this case.

**COUNT VII: INFRINGEMENT OF U.S. PATENT NO. 10,469,601**

124.   MusicQubed repeats and re-alleges the allegations in the Paragraphs above as though fully set forth in their entirety.

125.   The USPTO duly issued U.S. Patent No. 10,469,601 (the "'601 patent") on November 5, 2019, after full and fair examination of Application No. 13/695,413, which was filed on May 13, 2013.  *See* '601 patent at 1.

126.   The '601 patent is entitled "Content Management Apparatus."  *See id.*

127.   MusicQubed owns all substantial rights, interest, and title in and to the '601 patent, including the sole and exclusive right to prosecute this action and enforce the '601 patent against infringers, and to collect damages for all relevant times.

128.   The claims of the '601 patent are not directed to an abstract idea and are not limited to well-understood, routine, or conventional activity.  Rather, the claimed inventions include inventive components that improve upon the function and operation of providing content to a user device and controlling access of the user device to specific content.

129.   The written description of the '601 patent describes in technical detail each limitation of the claims, allowing a skilled artisan to understand the scope of the claims and how the non-conventional and non-generic combination of claim limitations is patently distinct from and

improved upon what may have been considered conventional or generic in the art at the priority date. The '601 patent also identifies and circumscribes all information necessary for a skilled artisan to perform each limitation in the claims in light of that which was known in the art at the priority date.

130.    Defendants have infringed and continue to infringe the '601 patent by making, using, providing, supplying, selling, offering for sale, or distributing the Accused Products.

131.    Defendants have directly infringed and continue to directly infringe, either literally or under the doctrine of equivalents, at least claim 1 of the '601 patent.

132.    For example, the Accused Products, as used by Defendants or a customer, provide an apparatus configured to provide a chart of content items to a plurality of user devices and configured to enable individual users to temporarily access one or more content items listed in the chart, the apparatus comprising: a memory; and at least one processor coupled to the memory and configured to: communicate with user device applications; define user access permissions, including temporary user access permissions, relating to individual ones of the one or more content items; implement the user access permissions in relation to user devices by making available the one or more content items listed in the chart to at least one user device application; determine a first consumption event of the one or more content items; associate a first value with the first consumption event; determine a second consumption event of the one or more content items, wherein the second consumption event is different from the first consumption event; associate a second value with the second consumption event, wherein the second value is different from the first value; determine one or more scores indicative of consumer response to the one or more content items based on the first value and the second value; and automatically generate a report based on the one or more scores, denoting the popularity of the one or more content items.

133.    More specifically, upon information and belief, for example, the Redbox streaming system to stream free live TV, including the user selection of multiple channels provides, at least, one example of the Accused Products, as used by Defendants or a customer, providing an apparatus configured to provide a chart of content items to a plurality of user devices and configured to enable individual users to temporarily access one or more content items listed in the chart, as recited in claim 1 of the '601 patent.



**Figure 16**
Source: *Watch Free On Demand*, REDBOX.COM, https://www.redbox.com/stream-free-live-tv?channel=tastemade.

134.    Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe the '601 patent by inducing others to directly infringe the '601 patent.  Defendants have induced and continue to induce their subsidiaries, partners, affiliates, and end-users, including Defendants' customers and potential customers, to directly

infringe, either literally or under the doctrine of equivalents, the '601 patent by using the Accused Products.  Defendants took active steps, directly or through contractual relationships with others, with the specific intent to cause them to use the Accused Products in a manner that infringes one or more claims of the '601 patent, including, for example, claim 1 of the '601 patent.  Such steps by Defendants included, among other things, advising or directing personnel, contractors, or end-users to make or use the Accused Products in an infringing manner; advertising and promoting the use of the Accused Products in an infringing manner; or distributing instructions that guide users to use the Accused Products in an infringing manner.  Defendants are performing these steps, which constitutes induced infringement with the knowledge of the '601 patent and with the knowledge that the induced acts constitute infringement.  Defendants are aware that the normal and customary use of the Accused Products by others would infringe the '601 patent.  Defendants' inducement is ongoing.

135.    Since at least the time of receiving this Complaint, Defendants have also indirectly infringed and continues to indirectly infringe by contributing to the infringement of the '601 patent. Defendants have contributed and continues to contribute to the direct infringement of the '601 patent by personnel, contractors, customers, and other end users by encouraging them to use the Accused Products to perform the steps of the patented process as described in one or more claims of the '601 patent.  The Accused Products have special features that are specially designed to be used in an infringing way and that have no substantial uses other than ones that infringe one or more claims of the '601 patent, including, for example, claim 1 of the '601 patent.  The special features constitute a material part of the invention of one or more of the claims of the '601 patent and are not staple articles of commerce suitable for substantial non-infringing use.  Defendants' contributory infringement is ongoing.

136.     Defendants have had knowledge of the '601 patent at least as of the date when it was notified of the filing of this action.

137.     Furthermore, on information and belief, Defendants have a policy or practice of not reviewing the patents of others (including instructing their employees to not review the patents of others), and thus has been willfully blind of Plaintiff's patent rights.

138.     Defendants' actions are at least objectively reckless as to the risk of infringing a valid patent and this objective risk was either known or should have been known by Defendants.

139.     Since at least the time of receiving this Complaint, Defendants' direct and indirect infringement of the '601 patent is, has been, and continues to be willful, intentional, deliberate, or in conscious disregard of Plaintiff's rights under the patent.

140.     MusicQubed or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '601 patent.

141.     Plaintiff has been damaged and continues to be damaged as a result of the infringing conduct by Defendants alleged above.  Thus, Defendants are liable to MusicQubed in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

142.     MusicQubed has suffered and continues to suffer irreparable harm, through its loss of market share and goodwill, for which there is no adequate remedy at law.  MusicQubed has and will continue to suffer this harm by virtue of Defendants' infringement of the '601 patent. Defendants' actions have interfered with and will interfere with MusicQubed's ability to license technology.  The balance of hardships favors MusicQubed's ability to commercialize its own ideas and technology.   The public interest in allowing MusicQubed to enforce its right to exclude

outweighs other public interests, which supports injunctive relief in this case.

## JURY DEMAND

143.     Plaintiff hereby requests a trial by jury on all issues so triable by right.

## PRAYER FOR RELIEF

144.     WHEREFORE, MusicQubed requests that the Court find in its favor and against Defendants, and that the Court grant MusicQubed the following relief:

a.  Judgment that one or more claims of the Asserted Patent has been infringed, either literally or under the doctrine of equivalents, by Defendants or all others acting in concert therewith;

b.  A permanent injunction enjoining Defendants and their officers, directors, agents, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in concert therewith from infringement of the '215 patent, '077 patent, '277 patent, the '274 patent, and '601 patent; or, in the alternative, an award of a reasonable ongoing royalty for future infringement of the '215 patent, '077 patent, '277 patent, the '274 patent, and '601 patent  by such entities;

c.  Judgment that Defendants account for and pay to MusicQubed all damages to and costs incurred by MusicQubed because of Defendants' infringing activities and other conduct complained of herein;

d.  Judgment that Defendants' infringement of the '215 patent, '077 patent, '277 patent, '274 patent, and '601 patent be found willful, and that the Court award treble damages for the period of such willful infringement pursuant to 35 U.S.C. § 284;

e.  Pre-judgment and post-judgment interest on the damages caused by Defendants' infringing activities and other conduct complained of herein;

f.   That this Court declare this an exceptional case and award MusicQubed its reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285; and

g.   All other and further relief as the Court may deem just and proper under the circumstances.

Dated: <u>November 27, 2023</u>         Respectfully submitted,

By: _/s/ James F. McDonough, III_

James F. McDonough, III (GA 117088) *
Jonathan R. Miller (GA507179) *
Travis E. Lynch (GA 162373) *
**Rozier Hardt McDonough, PLLC**
659 Auburn Avenue NE, Unit 254
Atlanta, Georgia 30312
Telephone: (404) 564-1866, -1863, -1962
Email: jim@rhmtrial.com
Email: miller@rhmtrial.com
Email: lynch@rhmtrial.com

C. Matthew Rozier (CO 46854) *
Kristin M. Whidby (VA 91805) *
**Rozier Hardt McDonough, PLLC**
1500 K Street, 2nd Floor
Washington, DC 20005
Telephone: (404) 779-5305; (202) 217-0575
Email: matt@rhmtrial.com

Jonathan L. Hardt (TX 24039906) *
**Rozier Hardt McDonough, PLLC**
712 W. 14th Street, Suite C
Austin, Texas 78701
Telephone: (737) 295-0876
Email: hardt@rhmtrial.com

*Attorneys for Plaintiff* M<small>USIC</small>Q<small>UBED</small> I<small>NNOVATIONS</small>, *LLC*

*Admitted to the Eastern District of Texas

**List Of Supportive Links**

A. *U.S. Patent No. RE 42,685*, USTPO.GOV,
https://patentcenter.uspto.gov/applications/11961991, and https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/RE42685

B. *U.S. Patent No. 7,130,616*, USTPO.GOV,
https://patentcenter.uspto.gov/applications/09924646, and https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7130616

C. *U.S. Patent No. 9,491,215*, USTPO.GOV,
https://patentcenter.uspto.gov/applications/14700778, and https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/9491215

D. *U.S. Patent No. 7,461,077*, USTPO.GOV,
https://patentcenter.uspto.gov/applications/10208635, and https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7461077

E. *U.S. Patent No. 8,930,277*, USTPO.GOV,
https://patentcenter.uspto.gov/applications/12772058, and https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/8930277

F. *U.S. Patent No. 7,281,274* USTPO.GOV,
https://patentcenter.uspto.gov/applications/10685536, and https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/7281274

G. U.S. Patent No. 10,469,601 USTPO.GOV,
https://patentcenter.uspto.gov/applications/13695413, and https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10469601

H. *Chicken Soup for the Soul Entertainment, Inc.*, SEC 8-K Form (filed Nov. 21, 2023), available at SEC.COM,
https://www.sec.gov/Archives/edgar/data/1679063/000110465923120001/tm2331190d1_ex99-1.htm

I. *Careers*, REDBOX.COM, https://www.redbox.com/careers

J. *Careers*, REDBOX.COM,
https://recruiting2.ultipro.com/RED1020RARL/JobBoard/2d40d12c-ba03-423b-b519-be373c45930b/OpportunityDetail?opportunityId=7a5d7007-7835-46dd-b9dd-ce13e1867690

K. LINKEDIN, https://www.linkedin.com/jobs/view/field-service-technician-dallas-tx-at-redbox-entertainment-inc-3615113910/

L. REDBOX.COM, https://www.redbox.com/

M. *Supported Devices*, REDBOX.COM, https://www.redbox.com/ondemand/supported-devices

N. *Redbox App*, GOOGLEPLAY,
https://play.google.com/store/apps/details?id=com.redbox.android.activity

O. *Redbox Help Center*, REDBOX.COM, https://help.redbox.com/redbox-streaming-services/streaming-requirements-features/1717/

P. *Redbox On Demand Service Terms*, REDBOX.COM,
https://www.redbox.com/ondemandterms

Q. *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-movies/featured

R. *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-movies/on-fire

S. *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-checkout

T. *Watch Free*, REDBOX.COM, https://www.redbox.com/stream-free-live-tv

U. *Redbox Help Center*, REDBOX.COM, *Redbox Streaming Services*,
https://help.redbox.com/redbox-streaming-services/streaming-requirements-features/1686/

V. *Redbox Help Center*, REDBOX.COM, *Redbox Streaming Services*,
https://help.redbox.com/redbox-streaming-services/streaming-requirements-features/1713/

W. *On Demand*, REDBOX.COM, https://www.redbox.com/ondemand-movies/on-fire?queryId=46aa4d979b7d7d65

X. *Watch Free On Demand*, REDBOX.COM, https://www.redbox.com/stream-free-live-tv?channel=tastemade